## CASTLE v. LOGAN.

(Circuit Court of Appeals, Eighth Circuit. October 6, 1905.)

No. 2,167.

BILLS AND NOTES—NOTE PAYABLE ON CONDITIONS—CONSTRUCTION OF CONDITIONS.

> Citizens of a city, through plaintiff, as trustee, donated conditionally, a sum of money to defendant, for which he gave his note, payable in 10 years, but subject to certain conditions, evidenced by a written contract attached, which provided, that defendant should reconstruct and operate a manufacturing plant in the city and employ therein a number of workmen, estimated at from 40 to 75; that he should be credited on the note with 10 per cent. of the amount paid out in salaries and wages in the business, and should continue to operate the plant in good faith until the note was fully paid in such manner. It further provided that, in the event of the "abandonment or permanent stopping of the operation of said plant" before the note was so paid, any balance due thereon should be repaid and should become at once due and payable. *Held*, that the stopping of the operation of the plant, continuing for more than a year, during which time the workmen were not employed by defendant, and without any definite intention of resuming work, was an abandonment and permanent stopping within the meaning of the contract. and that by its terms the balance due on the note became at once collectible.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

On February 1, 1899, the plaintiff in error (defendant below) made and delivered to the plaintiff his nonnegotiable promissory note in writing as follows:

"$9,000.00             Keokuk, Iowa, February 1, 1899.

"Ten years after date, without interest, I promise to pay to William Logan, trustee, or his successors, the sum of nine thousand ($9,000.00) dollars, for value received.

"This note is nonnegotiable, and is to become due and payable under the terms and conditions of an agreement this day made and entered into by and between the undersigned and William Logan as trustee; a copy of said agreement being hereto attached and marked 'Exhibit A' and made part hereof.

"C. H. Castle."

Exhibit A, attached to the note, was signed on the same date by said C. H. Castle and by William Logan, trustee, and showed that said sum of $9,000 was contributed by unnamed citizens of Keokuk, and by William Logan, as their trustee, paid over to said Castle as a subsidy or donation, on the agreement of said Castle to reconstruct the building, machinery, and equipments of an abandoned plant, known as the Keokuk Stove Works, at the corner of Twelfth and Johnson streets, in that city, and employ therein men to the estimated number of from 40 to 75. Said Castle to commence the reconstruction of said stove works in 60 days, and expend thereon at least $9,000 and have the stove works in actual operation within 4 months; and it was agreed that each year there should be indorsed as paid on the principal of said note 10 per cent. of the amount paid out by said Castle during such year for labor of all kinds in connection with such works, including salaries to traveling salesmen who were residents of Keokuk, and that, until such payments for wages and salaries should entitle said Castle to such indorsements to an amount fully paying said note, said Castle should in good faith continue the active

operation of said plant as a stove works manufactory or foundry, or some other manufactory, but that "temporary stopping in said operation, caused by strikes, fire, elements, unavoidable accidents, or other legitimate causes for the temporary stopping of said business, not to be considered as a breach of this contract." It was further provided that "in the event of the permanent stopping of the operation of said plant as above described, or the abandonment of same as a manufactory before there has been an amount expended by said Castle, or those acting under him as above provided, to fully pay off the said note of said Castle under the terms and conditions as is herein provided, then, in the event of such abandonment or permanent stopping of the operation of said plant as is above provided, said C. H. Castle agrees to refund and repay at once to said William Logan, as trustee, or his successors, any amount of the said $9,000 which has not been paid upon the note above described in accordance with the terms and conditions of this contract. The abandonment or permanent stopping of the operation of said plant to cause any balance due from said C. H. Castle to William Logan. trustee, to become at once due and payable."

This action was begun June 5, 1902, based on said note and agreement— the plaintiff alleging in his petition that said Castle had not complied with the terms of said agreement, and had not continued the operation of the plant as a stove works manufactory or foundry, or other manufactory, and had permanently stopped and abandoned the operation of the same; admitting that he had been credited upon said obligation $1,559.02 on February 1, 1900; and asking judgment for $7,440.98. The defendant answered, admitting the making of said note and annexed agreement, and averring that he had performed that agreement and was also entitled to larger credits on said note. On the trial it appeared that the defendant reconstructed the building and equipments of said plant and begun its operation about July 10, 1899, and continued the manufacture of stoves therein until August 18, 1900, giving employment to from 45 to 70 men; and at the last-named date all work of manufacturing ceased, and was not afterwards resumed, although a bookkeeper and one other man had been kept on the premises at some slight employment. There was also some testimony as to the amount which defendant was, under the agreement, entitled to have credited on the note. At the close of the trial the jury, by direction of the court, returned their verdict for the plaintiff for $6,337.70 for which amount, with costs, judgment was rendered.

W. J. Roberts, for plaintiff in error.

James C. Davis and Felix T. Hughes (Hazen I. Sawyer, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, having stated the case as above, delivered the opinion of the court.

It is only necessary in this case to consider whether the learned trial judge was justified in directing the jury to render their verdict for the plaintiff, as no complaint is made in respect to the amount of the verdict, if the plaintiff was entitled to recover. Was the plaintiff entitled to recover upon the note? The note itself says that it is to become due and payable under the terms and conditions of the attached agreement. Looking at that agreement we find that, after Castle has reconstructed and commenced the operation of the stove works plant, the note will not become due or payable so long as he shall "in good faith continue the active operation of said stove works plant, as a stove works manufactory or foundry, or as some other manufactory." It is evident from this written agreement that a principal consideration for the subsidy was the establishment and

carrying on of a business which should give continued employment to a large number of men, probably "from 40 to 75." The continued operation of the works was to be "active"; and Castle was entitled to be credited, as paid upon the note, with one-tenth of the amount paid each year "for labor of all kinds in connection with the said works, including salaries paid to traveling salesmen who are residents of Keokuk only."

Continuous, active operation of the works contemplated surely steady employment of this labor. That temporary stoppages might happen was foreseen; and such as should not be regarded as a breach of the contract for continuous active operation of the works were designated, namely, such as might be caused by "strikes, fire, elements, unavoidable accidents, or other legitimate causes for the temporary stopping of said business." The general words "other legitimate causes" must, under a familiar rule, be construed as being limited by the enumerated causes, to causes of a similar character, and hence to causes for stoppage over which the defendant had no voluntary control. The language so employed will not excuse, nor permit to be classed as temporary, a voluntary stoppage by the defendant, of the entire active operation of the plant, indefinitely in respect to time, resulting in dismissing the artisans and laborers to seek other employments, merely because in defendant's opinion the operation of the works was not profitable, or because he had allowed manufactured material to accumulate on his hands. At the time of the commencement of this action such voluntary stopping of all active operation of the plant had continued unbroken for nearly two years, without prospect or promise of change. A stoppage for an indefinite time, so long continued, with no assurance of change, is certainly a permanent stoppage of the operation of the plant and abandonment of the same as a manufactory, as those phrases are used in that contract, and obligates the defendant "to refund and repay at once to said William Logan, as trustee, or his successors, any amount of the said $9,000.00 which has not been paid upon the note above described, in accordance with the terms and conditions of this contract. The abandonment or permanent stopping of the operation of said plant to cause any balance due from said C. H. Castle to William Logan, trustee, to become at once due and payable."

The word "permanent" as employed in this contract does not mean forever fixed and unchangeable, but is used in contradistinction to "temporary" as therein defined, and means a continued condition of stoppage for other than the temporary causes stated and which is indefinite and uncertain as to the time it will endure. Upon the happening of such a stoppage, permanent in character from its commencement, the balance unpaid of the note "became at once due and payable."

There was, upon the trial, no question as to the voluntary stoppage by the defendant of the active operation of this plant, or as to its character or continuance, which remained unchanged at the time of the trial.

The verdict for the plaintiff was properly directed, and the judgment is affirmed.